May it please the court. My name is Erin Hernandez, counsel for petitioner Marta Pesahay Teclezghi. Also present is co-counsel, lead counsel Holly S. Cooper. This case presents three discrete issues for this court. First, whether petitioner's prior counsel performed with sufficient competence when they prejudicially failed to inquire the petitioner whether she had suffered female genital mutilation. Counsel, as I understand this case, tell me if I've got it right. She told her lawyer, the one that you're saying committed malpractice or rendered ineffective assistance rather, that she was persecuted because she was a Jehovah's Witness. The lawyer filed a petition saying she was persecuted because she was a Jehovah's Witness. The IJ and BIA just flat didn't believe her about a well-founded fear of persecution on account of being a Jehovah's Witness because, among other reasons, she didn't have any witnesses from a Jehovah's Witness church in America to show that she actually was a Jehovah's Witness and also she'd done fine, really, in her native country. You're saying it was ineffective assistance not to ask whether she'd been subject to female genital mutilation because the lawyer should have known that most little girls are mutilated by the old women in that country. I don't actually get it. I don't get why that doesn't just leave the adverse credibility standing firm and why it's ineffective assistance not to ask when the client doesn't even tell the lawyer or seek any relief on account of it. All I know, she feels the same as the old woman. That's the proper way for a respectable woman to be. His Honor brings up three distinct points. In a matter of clarification, on the record, prior counsel was not counsel that submitted the I-589 asylum application. That was Petitioner's pro se asylum application that was renewed before the court. Thank you for that correction. What we don't have is an asylum application and prior proceedings that had the benefit of counsel. We don't have that. And yes, I am saying that I do feel that it is not meeting the standard of sufficient competence when you fail to inquire of your client who states subjective fear to you whether or not she's undergone female genital mutilation, an intensely personal, ongoing act of persecution. And you're on notice from the State Department reports that the prevalence rate in Eritrea is 95%. Counsel, do you think, what do you think would happen with a woman coming into a male counsel? Could you speak a little louder, please? Sure. I've been known to mumble in my own courtroom, so why not here? You have a male counsel. A woman comes in. She says, look, I'm from Eritrea. I'm trying to stay in the United States. I've been a Jehovah's Witness. Do you think it's incumbent upon the male counsel to say, have you ever been mutilated? Have your genitals ever been mutilated? You think that that's required by the code of conduct of the, where something... Absolutely. The basic duty of an attorney is to fact find and apply those facts to the law. The law at the time that petitioner was in removal proceedings, the board had... Is it only required for Eritrean women? No. It's for everybody? I would say that when counsel has board precedent recognizing that female genital mutilation is a viable claim to persecution and they're on notice, that could be a 95% possibility in that case, competent counsel asks that question. And especially with dealing with this type of persecution, an act that happened when she was one month old, but that the physical and psychological consequences are lifelong and come throughout the stages of life. Isn't this pretty much all Sub-Saharan African girls plus a lot of Arab girls? I would agree that it tends to, the higher prevalence rates tend to be in the areas that His Honor has suggested. Is it religious or cultural? In Eritrea, and I'm speaking from the State Department report that's in the record, it's virtually universal across the religious practices. As a point of clarification, petitioner's not asserting this on a religious basis, but on a cultural basis on her social group. Yeah, all right. There's something else I keep having trouble with. The whole notion, of course, of female genital mutilation seems horrible to us, just inexcusable thing to do. But there's this, nevertheless, the question on asylum is always well-founded fear of persecution if the person returns. Now, let's stipulate that there's a presumption because of past persecution of females. Nevertheless, all that does is create a rebuttable presumption. They're not going to do it again because it's already done. What persecution can a person fear from going back? I could see if a person had not been circumcised, female circumcision is what they regard it as. If a person had not been circumcised, if they go back, they fear being circumcised. But once it's already done, it's not, there's no reason to do it again. Nobody's going to do it again. The old ladies do this to the baby girls. This Court in Mohammed v. Gonzales said that there was a well-founded fear of future persecution and that the government would not be able to rebut that. I think this case is open for fact-finding on what that would be, and that's giving Petitioner the opportunity to have a full, fair hearing to develop what that fear looks like. Second-generational harm, Your Honor? Would this happen to Petitioner's future children? I think that we're misunderstanding the type of harm that we're talking about, a harm that occurs when she's a month old but has lifelong consequences. Look at Petitioner's declaration. But what you're suggesting, maybe I'm wrong, you talk about the majority of sub-Saharan African women have this. Are the majority of sub-Saharan African women entitled to come to this country and stay here? I wouldn't be making that proposition, and I don't believe that that's before the Court on whether or not every one of them. Well, listen, if you're asking us to say, well, because this happened to her and we know what happened to the rest of them, what's the difference? They're all entitled to it. If she's entitled to it, they're entitled to it. I would say that this Court would not be going any further than the decision in Mohammed, which found that this very inaction by counsel to be prejudicial, that decision on whether or not this circumstance warrants asylum, this Court respectfully held that it was prejudicial of prior counsel not to inquire and that going down on lower proceedings and looking at the proceedings, they said, yes, there's prejudice, without more in mind. I read Mohammed, and I have trouble understanding it, frankly. They say it's a permanent ongoing harm, and that's certainly true. But it's kind of like if some evil regime cut off the right arm of everyone from a particular ethnic group. Well, it's off. They're not going to do it again. Now, one way Mohammed dealt with that is they said, well, in her case, maybe they will do it again, basically. She'll be subjected to infibulation. But there's nothing like that in this file. I can tell you the doctor's report says that she suffered type 2 genital mutilation, and if it's the Court's position about whether it's possible to have continuing harm, this case would be right. No, no. You didn't understand my question. Continuing harm from something that's passed and won't be repeated, I don't understand why that's a fear of future persecution. So if I understand His Honor's position correctly, type 2 is excision. No, no. You don't understand. You're standing on Mohammed and saying, that's it. You have to do this because of Mohammed. My thought is, I'm not sure I understand Mohammed, so I don't know whether it should be extended, limited, distinguished, called en banc, followed, what? So I'm asking you questions about what it means, and I still don't understand why, because you were persecuted on account of one of the five grounds in the past where it's absolutely certain that it cannot happen again, it's a physical impossibility, that that would be a well-founded fear of future persecution, because it has to be a well-founded fear of something in the future and not merely something bad happened to you so we're going to let you stay in America. There's two points there. A factual matter in that someone that suffers type 2, which is excision, could potentially be infabulated. There's that point. The second point, which I think is where the Court's asking me, is in regards to the well-founded fear, what fear do you have when you've been mutilated looking forward? On the record, I can tell you of the harm that she suffers. I can tell you the State Department — She's not getting it at all. We're stipulating. She suffered a terrible harm, and it was persecution because she was female. You don't have to beat that drum. You already won. The question is what's going to happen to her in the future other than continued suffering from the past persecution. And I think by not providing her a hearing and a forum to opportunity, what is on the record would just deny her the opportunity to explore, like, the second-generational harm that was recently recognized by this Court in a decision last week. That's not in front of the administrative record we have before this Court. And to deny her the hearing would deny her the opportunity to present that information. But when she's established a well-founded fear or past persecution, it's the government's responsibility to rebut that well-founded fear. That's not Petitioner's burden to bear. Why isn't it rebutted by the physical impossibility of repetition? Because that's not in the continuing sense of the harm and what she might fear in regards to second-generational harm. The government would have to show that they could control this. You mean to say that because she might have a fear that her daughter might have this done to her? Is that what you're talking about, an unborn daughter who's not even conceived yet? That's enough. An unborn child, yes, in this Court's decision as recent as last week. They recognize the idea that the fear of this future persecution in the daughter should be a factor to be considered. Again, this record's closed. Is she pregnant with a daughter? Are you asking me for information outside the record, Your Honor? Correct. Yes, she is pregnant and had a son. No, I didn't mean outside the record. I mean, does the record show that she's pregnant with a daughter? I'm telling you that's not in the record. She might be, I realize that. Counsel? Yes, Your Honor. Several of the cases seem to suggest that relief might be granted on humanitarian grounds. Has there been any specific decision that they raise the possibility? Has there been a decision finding that it's available on humanitarian grounds? Yes, Your Honor. That was the Benjamin decision that came out on the 24th of this past month. And it left a ---- Do you have a 28-K letter on that for us? No, I don't have a 28-K. Only that. Incidentally, is there any stopping point? I'm interested in Judge Duffy's question to you. I don't see why, logically, if she wins, all Arab and African girls and females, all Arab and African females should not be given asylum. They can all move wholesale to the U.S. I would like to reserve some time to ---- Is there anything to stop that?  Yes, Your Honor. Your Honor is presenting a situation in which there might not be the same level of ongoing and continuous harm. And the burden of the government, the government could potentially rebut that by saying there were circumstances which the government can now control female genital mutilation such that this ongoing harm can be stopped. There is a potential that that could be rebutted. Thank you, counsel. Thank you. May it please the Court, Joan Smiley from the Department of Justice here on behalf of Attorney General Eric Holder. The issue in this case is not the grant or denial of asylum. It's whether the Board abused its discretion when it denied Petitioner's untimely motion to reopen. That was filed three years after the Board had rendered its decision. Petitioner waited on this ---- So what we can do, the real problem is Mohammed for you. And what you're saying is we don't have to deal with Mohammed because it's a three-year-late motion to reopen. Well, that's one reason, Your Honor, that Mohammed is distinguishable. Also, I would point out in Mohammed the client was a minor, and this Court acknowledged that it was obligated, that the obligation of counsel was greater in that situation because she was a minor. There in Mohammed the claim of ineffective assistance of counsel was timely raised in the motion to reopen. It did not involve equitable tolling, as this case does. And here the issue was whether an exception to the filing requirement should apply. That was not at all at issue in Mohammed. I would also note that in Mohammed the attorney there made significant errors in the motion to reopen. Probably the most blatant one was claiming that her client had not yet been subject to female genital mutilation when she had been. The evidence contradicted her claim, the attorney's claim. In addition, the board decision in that case had portions of the decision missing. This Court noted that page 2 started and it appeared that sections of the decision were missing. There were numerous errors in the decision. And the motion to reopen did not hinge on the alien's credibility, whereas here that was an issue. As this Court stated in Asinor, any prejudice arising from the previous attorney's failure to raise the claim of female genital mutilation was directly attributable there to her failure to inform counsel that that possibly was an issue, rather than the quality of the representation. She was not prevented in Asinor or here from reasonably presenting her case not deprived of due process, and thus she did not establish prejudice, and she failed to establish here that she acted with due diligence. The record is clear. Eight years elapsed from the time the notice to appear was issued on December 22, 1998 until she filed a motion to reopen October 24th, excuse me, October 25th, 2006. Counsel? Yes. In the Asinor case, the case was reversed by the attorney general on the basis that the cat claim didn't have any time limits and could be raised at any time, and we have now a couple of cases that suggest that relief under the cat claim is possible. So it would seem that if that is part of the claim, that there is no time bar. Do you agree with that? Well, here I'm not sure there's a cat issue. She hasn't ‑‑ Well, first, if in fact there is a cat issue, you agree there's no time limit. I believe that there are decisions indicating that. However, in this case, she has not demonstrated or alleged that she would be tortured by forces that the government cannot control. I don't believe ‑‑ Counsel, just a moment. I'd like the technicians to try to get rid of the kind of echo in your talk. Is somebody available? Maybe shall I raise the microphone a little? Is it too close? Maybe that will help. Is that any better? Lean a little closer to it if you can. Yes. Okay. I'll try to be clearer. During the eight years that elapsed during this period that I've just mentioned, the petitioner had numerous seven removal hearings, three separate attorneys. She filed appeals to the board. She filed a case in this court, never claimed and never raised a question about female genital mutilation. In fact, this court in its previous decision, and that can be found at pages 272 to 274 of the record, agreed with the immigration judge that she was not credible. She did raise it the moment she knew that it was a potential claim. Isn't that correct? Well, she raised that her allegation is that she spoke with a fellow detainee at the detention center where she was housed, and that person told her that in her case she was able to make that claim. At that point, the petitioner called that detainee's counsel, I believe, Ms. Cooper, and Ms. Cooper, opposing counsel, has set forth those facts in her affidavit in the record. However, there's no claim at all that she had any fear of female genital mutilation or that she had been subjected to it during all of these years, three different lawyers. She never indicated or mentioned it in any way. And the other cases that petitioner has cited are equally distinguishable. In the Garamani v. Gonzalez case, there the court accepted the petitioner's statements as true, whereas here the board indicated that she had been found not credible in the past, as the court agreed. And the board found that her claims recording the ineffective assistance of counsel were not worthy of belief. What do we do with the credibility? On the one hand, it's established pretty well, I guess, with finality that she's a liar. On the other hand, she's not lying about being female genitally mutilated. On the other hand, motion to reopen is a discretionary and disfavored motion under Doherty, and I wonder if can they factor that the person is a liar into denying a motion to reopen, even though they know she's not lying about the particular thing she's now raising? Well, again, the board has broad discretion in ruling on these motions to reopen. They consider everything in the record. And in this record, of course, is the fact that the board and this court found that petitioner was not credible. Well, you've got a chronic liar who did not know that telling the truth was her best angle and then learned it from somebody in jail. Well, she pursued another angle that she thought would be successful. That was the Jehovah's Witness claim. I would also point out opposing counsel referred to a case last week. I believe she was referring to Benyamin v. Holder, which was issued on August 24th. And that case is distinguishable as well. There, of course, the posture of the case is different. It was an appeal of an asylum denial, not a motion to reopen. There was no issue of equitable tolling there. And, of course, there the immigration judge did not make an adverse credibility finding, and the alien's testimony was taken as true. So it's a very different set of facts. And also in that case, this court noted that the board distinguished between the different types of female genital mutilation counter to Ninth Circuit precedent in Mohammed and in the board's Kasinga case. Here, the board did not engage in that type of analysis. So the case is really not on point. Unless the judges have any questions, the government would rely on the brief that was filed in this case. Thank you. Thank you, counsel. Counsel, your time was exhausted, but go ahead and take 30 seconds for your call anyway. Thank you, Your Honor. One point of clarification. In Petitioner's brief, she does assert her eligibility under the Convention Against Torture. This court in Lemsico recognized that the inherently believable determination on a prior adverse determination to apply to a motion to reopen is only available where some of the testimony being relied on was developed at an evidentiary hearing. That's not the case. The motion to reopen, none of that testimony being or none of that evidence being relied on had the benefit of a testimonial hearing. And Petitioner would ask that the court grant her petition for review to allow a full and fair hearing on this one discrete claim. Thank you. I want to give you another chance to address something that's bothering me, because you probably thought about it some more when opposing counsel was giving her argument. I know that this procedure, I know from the country reports, that this procedure is common to the point of being almost universal in many or most sub-Saharan African countries. It's more spotty in the Arab countries. In some it's pretty common, and in some it isn't. It doesn't sound right that something that's that culturally considered appropriate in so much of the world and that we consider horrible means that all the females from those countries are all entitled to asylum, even though it's not going to happen to them again. Do you have any stopping point to your principle? So there's two different types of asylum. There's asylum based upon the well-founded fear of future persecution, and then there's asylum where you've suffered a level of persecution that is recognized as continuing and ongoing. And we're asserting that type of asylum here, that it rises in the... That must be a section of the statute I'm not familiar with. So I would point the Court to the board in the matter of Chin, recognizing that past persecution... Oh, you're talking about where the past persecution was so severe that it would be inhumane to send them back. That's correct, Your Honor. I get it. Thank you, Your Honor. Thank you. Could we have a short break? We'll take a ten-minute recess. I didn't mean to interfere with submitting the case. Kugleski is submitted. We'll take a ten-minute recess for ten minutes.
judges: Fletcher B. , Kleinfeld, Duffy